### THE RAKEL.

### BORDEN v. LINDHOLM.

(Circuit Court of Appeals, Fifth Circuit. February 14, 1923.)

#### No. 3945.

Shipping ☞35—Respondents held not bound by a charter made by brokers as their agents.

    Brokers in chartering libelant's vessel *held* not to have been acting as agents for respondents who were not bound by the contract.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Suit in personam upon a charter party by J. A. Lindholm, as master of the bark Rakel, against N. B. Borden & Co. From a decree (280 Fed. 411) holding him liable, Nathaniel B. Borden, surviving partner of the firm of N. B. Borden & Co., appeals. Reversed.

George C. Bedell, of Jacksonville, Fla., for appellant.

E. P. Axtell and C. D. Rinehart, both of Jacksonville, Fla., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This is an admiralty suit in personam upon a charter party, brought by the master of the bark Rakel against the firm of N. B. Borden & Co. N. B. Borden, surviving partner, appeals from a decree holding him liable as charterer.

The libel alleges, and the answer denies, that appellant's firm was the charterer.

The charter party is between the bark's master and G. M. Fryxell & Co., "as agents for charterer." It was executed October 4, 1912, at Borga, Finland, "for both parties as per authority," by Torsten Eklof, "as agent only." It provides that the bark shall proceed to Fernandina, Fla., or Mobile, Ala., take on a cargo of lumber, and deliver it to one Spanish Mediterranean port, upon being paid the freight at 130 shillings from Fernandina, or 135 shillings from Mobile, per St. Petersburg standard.

Fryxell & Co. were brokers, residing at Barcelona. Borden & Co. were lumber merchants, engaged in business at Fernandina. ·

The evidence relied on is entirely documentary, and is to be considered as confined to the single question whether Borden & Co. authorized Fryxell & Co. to execute the charter party above mentioned.

On September 27, 1912, N. B. Borden was in Barcelona, and then and there entered into a contract by which he sold to Ylario y Alpera a cargo of lumber, f. o. b. Fernandina or Mobile at seller's option, to be ready for delivery in January, 1913. The contract also provides:

"Sellers guarantee tonnage by steamer at 140/– or by sailer at 130/– per St. Petersburg std., both on Pixpinus charter conditions."

At about the same time, and prior to the execution of the charter party, Borden entered into six other contracts of sale of lumber to Spanish buyers, including J. Mir Jaume and others of Palma de Mallorca. Borden also had a similar contract outstanding with Messrs. Delgado, of Carthagena. These contracts were not put in evidence, but it appears that Fryxell & Co. negotiated them as Borden & Co.'s brokers.

September 28, 1912, Fryxell & Co., in a letter to Borden & Co., at Fernandina, enumerated the contracts which recently had been entered into for the sale of lumber, and stated:

"As you are aware, Mr. Borden has taken guarantee of tonnage on various contracts and we have promised him to do our best to secure suitable tonnage and to report to you all information about available tonnage. In future negotiations it must be understood between us, that all charter parties are to contain the following stipulations," etc.

Portions of other letters written during October and November, 1912, by Fryxell & Co. to Borden & Co., considered material by either or both of the parties, are:

October 3d:

"We confirm our respects of the 30th ult. Ylario y Alpera on Liq: on, Valencia. Inclosed please find translation of this contract. Please acknowledge receipt.

"Chartering. We have negotiated with an Finnish shipowner re a suitable sailor for Valencia. His conditions are still too elevated, but we trust that

we will be able to reduce his pretensions. We are under the impression that you authorize us to charter best possible, not exceeding the rate you have guaranteed, when we have got a chance, and we will cable you a word if we succeed. For instance:
"'Ylarinnana' if we have chartered for Ylario y Alpera. * * * 'Mallorcana' if we have chartered for the 4 Palma houses."

### October 8th:

"We have also chartered the Finnish sailer 'Rakel.' * * * We have not destinated it to any special port, but we should prefer to charter her with Delgado if we can come to terms with him when he arrives to this town."

### October 23d:

"We confirm our respects of the 9th inst. and beg to hand you inclosed copy of charter party for sailing vessel 'Rakel,' which we hope you will find in order. Please advise us for what order you intend to use this ship. Messrs. Ylario y Alpera agree to accept the vessel, though their contract states that they are entitled to a Pixpinus charter form. * * *
"Please let us know what you decide. We are offered various other sailers of different sizes for pitch pine and are bidding same to our friends the buyers."

### November 6th:

"We confirm our respects of the 5th inst., and beg to acknowledge receipt of your two favours of the 25th ult., contents of which noted with thanks.
"We will not charter anything definitely without previously consulting you, and beg to say we consider you ought also to try to find tonnage your side, as we see freights are increasing heavily and we fear you shall not now be able to charter at the figures your Mr. Borden guaranteed our buyers when here.
"We have so far chartered the 'Rakel,' which we take for granted you will use for Alpera."

### November 12th:

"'Hjertnes.' Inclosed please find charter party for this sailer which we have chartered for account of the Mallorca friends and suppose you will find it in order. Kindly acknowledge receipt."

### November 13th:

"As to the 'Rakel' we shall probably have to insure her for account of Ylario y Alpera."

The only letter from Borden & Co. to Fryxell & Co. relied upon by either party is that of October 25, 1912, the material part of which is as follows:

"We beg to acknowledge receipt of your favor of September 28th. * * *
"In reply we beg to advise that our Mr. Borden will arrive in New York to-day and will come to Fernandina very shortly after his arrival there, at which time we will take all these contracts and instructions up with him and answer them more fully, after we have had an opportunity of talking them over with him.
"We also acknowledge receipt of your letter of Oct. 3d and in reply we would suggest that you do not charter firm before advising us at which time we will be able to advise you when we would like the vessels to report as the market at this time is very bad and we do not want to get vessels on our hands before we can accumulate these cargoes."

Fryxell & Co. could not bind appellant, unless they had authority to do so before or at the time they signed the charter party. Counsel for appellee do not rely upon ratification, but contend that the neces-

sary authority is shown conclusively by the quoted portions of Fryxell & Co.'s letters of September 28th and October 3d and of Borden & Co.'s letter of October 25th in reply. The statements relied on in the first two of these letters are not assented to or acquiesced in by Borden & Co. in their reply, but, on the contrary, Fryxell & Co. are notified not to charter vessels before advising Borden & Co. and receiving their reply. We are of opinion that these three letters, considered together, fail to show an admission by Borden & Co. that they had authorized Fryxell & Co. to enter into the charter party sued on.

Under the contract with Ylario y Alpera, the buyers had the right to charter, and it was to their interest to do so if they could obtain tonnage for less than the guaranteed rate. These buyers would lose nothing unless the rate paid exceeded the rate guaranteed. Appellant, on the other hand, sold f. o. b. shipping point. He would gain nothing by chartering, but could only prevent a loss which might be occasioned by reason of his guaranty. He was not entitled to charter until demand was made upon him to do so, and no such demand is shown to have been made. Besides, he could not safely charter until informed whether the buyers would accept a sailing vessel or would require a steamship at a higher rate. It is not shown that the guaranty was absolute in any of the contracts negotiated by Fryxell & Co. on behalf of appellant's firm, and in the absence of such evidence it is not to be assumed that a different guaranty was given. Neither is it disclosed that any of the other contracts provided for delivery of lumber by appellant in Spain, but it is consistent with the evidence that all the sales were f. o. b. shipping points. In short, the evidence does not disclose that in any instance it was to appellant's interest to enter into a charter party. Borden & Co.'s letter of October 25th is to be read in the light of these circumstances, and when so considered, it is not surprising that they required advice from their agents before giving authority to charter.

The evidence supports the conclusion that Fryxell & Co. did not know for whom they were acting when they chartered the Rakel. These brokers represented appellant in the contracts of sale of lumber, but they also represented both appellant and the buyers in securing charters. If they had chartered the Rakel on October 4th for appellant, they would not have been attempting on October 8th to charter her to Delgado, one of the buyers of lumber from appellant. While they stated in their letter of October 3d that they understood they were authorized to charter for appellant, and designated the word "Mallorcana" to indicate the buyers, they afterwards turned the vessel they chartered over to the buyers.

It is apparent from the evidence that these agents did not themselves determine definitely for whom they had chartered the Rakel until some time between October 8th and October 23d, upon which latter date they notified appellant that they had chartered for him.

The conclusion is that the evidence is insufficient to sustain the decree.

Reversed.